UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THU THUY DINH,

           Petitioner,

    v.

BRUCE SCOTT, et al.,

           Respondents.

CASE NO. 2:26-cv-01745-JHC

ORDER

**I**

**INTRODUCTION**

This matter comes before the Court on Thu Thuy Dinh's Petition for Writ of Habeas Corpus.  Dkt. # 1.  The Court has considered the Petition, Respondents' return memorandum at Dkt. # 5, the rest of the file, and the governing law.  For the reasons below, the Court GRANTS the petition.

**II**

**BACKGROUND**

The following facts derive from sworn declarations submitted as part of the Respondents' return and Petitioner's A-file.  Petitioner first entered the United States on June 4, 1992, as a

ORDER - 1

lawful permanent resident (LPR) at age 21.  *See* Dkt. # 7-1 (A-file) at 4.  The A-file does not detail how she acquired lawful permanent residency.

After her 1992 entry, Petitioner developed a history of theft-related criminal convictions. In California, she was twice convicted of petty theft "with a forged or invalid access card" in 2003 and 2007, and she served one day and 45 days in jail respectively along with probation terms of three years.  *See* Dkt. # 6 ¶¶ 4, 6.  In 2006, also in California, she was convicted of grand theft and sentenced to 30 days in jail and two years of probation.  *Id.* ¶ 7.  In March 2012, in North Carolina, she was convicted of larceny and sentenced to 49 days in jail.  In May of that year, back in California, she was convicted of grand theft with an access card and sentenced to 360 days of jail and three years of probation.  *Id.* ¶ 8.  In 2015, in California, she was convicted of petty theft and sentenced to 60 days in jail and three years' probation.  *Id.* ¶ 9.  In 2019, also in California, she was convicted of petty theft and sentenced to 30 days in jail and two years of probation.  *Id.* ¶ 10.

On April 30, 2025, the government detained Petitioner as she returned to the United States at San Francisco International Airport, on account of her criminal history.  Dkt. # 7-1 at 3. The government then transported her to NWIPC, where she has been confined ever since.  *See* Dkt. # 6 ¶¶ 11–13.  On November 18, 2025, she was ordered removed by an immigration judge; her resulting appeal remains pending at the Bureau of Immigration Appeals.  *See id.* ¶ 15. Through a sworn declaration, the government states that it intends remove Petitioner to Vietnam if the appeal is dismissed, asserting that it has "generally able [*sic*] to obtain travel documents from Vietnam for its citizens subject to final orders of removal once administrative finality is achieved."  *Id.* ¶ 16.

Petitioner contends principally that the proper detention authority applicable to her case is under 8 U.S.C. § 1226(a), permitting release on bond.  *See generally* Dkt. # 1.

ORDER - 2

### III

### DISCUSSION

A.    Legal Standards

    1.    Habeas relief

Federal district courts have the authority to grant a writ of habeas corpus.  28 U.S.C. § 2241(a).  But this relief can be extended only under certain conditions.  *See* 28 U.S.C. § 2241(c).  One such condition is if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]"  *Id.*  "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief."  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

    2.    Due process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases); *see also Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) ("'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings.").

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  And the Supreme Court has held that noncitizen "detainees are entitled to notice and opportunity to be heard 'appropriate to the nature

ORDER - 3

of the case.'" *J. G. G.*, 604 U.S. at 673 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

In evaluating how much process is due in the immigration context, courts have recently applied the three-factor balancing test from *Mathews v. Eldridge*. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) ("*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."). Under this test, determining whether a governmental action violates "the specific dictates of due process [ ] requires consideration of three distinct factors," including the affected private interest, the risk of an erroneous deprivation of that interest given procedural safeguards, and the government's own interests in the challenged process. *Matthews v. Eldridge*, 424 U.S. at 335.

B.     Analysis

Petitioner asserts that her custody violates due process, *see id.* at 1, and that due process generally applies to immigration detention. *Id.* at 5. She also argues that she is not properly categorized as detained under 8 U.S.C. § 1226(c), which provides for mandatory detention, but under § 1226(a), which provides for discretionary detention. *See id.* at 3–4. Respondents say that she is detained under § 1226(c) on account of her multiple criminal convictions and that she is accordingly not entitled to release or a bond hearing. *See* Dkt. # 5 at 4–5.

First, the Court determines that Petitioner is properly detained under 8 U.S.C. § 1226(c). Respondents are correct that § 1226(c) mandates Petitioner's detention because she has committed a "crime involving moral turpitude" under 8 U.S.C. § 1182(a)(2)(A)(i)(I). *See id.* at 3–4. It is true that Respondent has a lengthy criminal history mostly consisting of convictions for theft. *See* Dkt. # 6 ¶¶ 3–10; *see also* Dkt. # 7-1 at 3–4 (A-file detailing criminal history). And it is true that "acts of petty theft constitute crimes of moral turpitude." *Castillo-Cruz v.*

ORDER - 4

*Holder*, 581 F.3d 1154, 1160 (9th Cir. 2009) (collecting cases). Thus, the Court concludes that § 1226(c) controls her detention.

Respondents agree that the only viable attack for Petitioner lies in due process. *See* Dkt. # 5 at 5–6. Thus, the issue is whether Petitioner's nearly year-long detention under § 1226(c) is constitutionally compliant. In such circumstances, courts analyze eight factors to determine whether the length of detention under § 1226(c) violates the Due Process Clause. *See Martinez v. Clark*, 2019 WL 5968089, at *7 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019). The *Martinez* court rejected a six-month brightline rule, considering instead:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time petitioner spent in prison for the crime that made him removable; (4) the nature of the crimes that petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at *7, *9. Respondents agree that the *Martinez* test applies here. *See* Dkt. # 5 at 6.

The Court concludes that the factors favor Petitioner. Considering the first factor, her detention has lasted over one year. *See* Dkt. # 5 at 3. The Supreme Court has established that the government may detain noncitizens under § 1226(c) "for the brief period necessary for their removal proceedings." *Demore v. Kim*, 538 U.S. 510, 513 (2003). In other words, such brief detention must have "a definite termination point." *Id.* at 512. The Court finds that Petitioner's detention lacks such a definite termination point and has certainly not been brief, and so this factor favors Petitioner. *See Martinez*, 2019 WL 5968089, at *9 (13-month detention indefinite under § 1226(c)); *Populus-Revuelta v. Scott*, 2026 WL 1067317, at *4 (W.D. Wash. Apr. 20, 2026) (finding that first *Martinez* factor favors petitioner detained for slightly over six months); *Odimara v. Bostock*, 2025 WL 1490395, at *5 (W.D. Wash. Mar. 27, 2025), *report and*

ORDER - 5

*recommendation adopted*, 2025 WL 1489705 (W.D. Wash. May 23, 2025) (first factor favors petitioner detained for eight months).

To the second factor, the Court is concerned that Petitioner's detention could continue indefinitely because nothing in the record shows that the government has taken steps towards securing travel documents.  The government says only that it "has generally able [*sic*] to obtain travel documents from Vietnam for its citizens subject to final orders of removal once administrative finality is achieved," Dkt. # 5 ¶ 16, but a past tendency is not a concrete plan to effect Petitioner's actual removal.

To the third factor, the length of her detention has surpassed her jail sentence for the most serious crime for which she was convicted.  The Court thus concludes that this factor favors Petitioner.

To the fourth factor, Petitioner's convictions are generally for petty theft involving a forged access card, though some for grand theft or larceny.  Because these crimes are relatively minor property crimes for which she was only sentenced to no more than two months in jail (save for the one 360-day sentence), the Court finds that this factor also favors Petitioner.

Petitioner makes no argument concerning NWIPC conditions and thus does not consider the fifth factor.

The sixth factor favors Petitioner because the Court finds nothing in the record that indicates Petitioner has delayed her own removal beyond filing an appeal as she is entitled to do.

To the seventh factor, nothing in the record shows that the government has delayed Petitioner's removal either, which favors its position.

Finally, based on the record, the Court is unable to predict the outcome of the BIA appeal.  Thus, the Court views this factor as neutral.

ORDER - 6

Because five of the eight factors favor Petitioner, one favors the government, and two are neutral, the Court determines that Petitioner's detention under § 1226(c) violates due process for its indefinite length.

As a result, the Court must determine the appropriate remedy. The Supreme Court has held that § 1226(c) does not require or authorize "periodic" bond hearings. *See Jennings v. Rodriguez*, 583 U.S. 281, 305–07 (2018). But nothing in the record shows that Petitioner has received any bond hearing at all. And other courts applying *Martinez* have concluded that the proper remedy in such cases is to order a bond hearing. *See Martinez*, 2019 WL 5968089, at *11; *Zagal-Alcaraz v. ICE Field Off.*, 2020 WL 1862254, at *8 (D. Or. Mar. 25, 2020), *report and recommendation adopted*, 2020 WL 1855189 (D. Or. Apr. 13, 2020); *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 921–22 (W.D. Wash. 2020) (considering an indefinite detention claim under 8 U.S.C. § 1225(b)(1)). This Court does the same.

The bond hearing shall comport with procedural requirements as described by the Ninth Circuit. *See Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011); *see also Tavurov v. Noem*, 819 F. Supp. 3d 1209, 1228 (W.D. Wash. 2026) (after applying *Martinez* factors, ordering bond hearing adhering to *Singh v. Holder*). These requirements include "a contemporaneous record of the hearing" where "the Government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community." *Id.*

## IV

### CONCLUSION

For these reasons, the Court GRANTS the habeas petition at Dkt. # 1. The Court ORDERS the government to provide Petitioner a bond hearing within 14 days.

//

ORDER - 7

Dated this 15th day of June, 2026.

John H. Chun
United States District Judge

ORDER - 8